**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEHMAR GLADDEN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-4986** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                          **February 28, 2022**

Philadelphia police detectives investigated the August 1996 murder of Hulon Bernard Howard, eventually leading to the Commonwealth charging Jehmar Gladden with second-degree murder, robbery, conspiracy, and firearms charges. A jury found him guilty of felony murder, robbery, and criminal conspiracy in May 1999. A state court judge sentenced him to life in prison without the possibility of parole. Mr. Gladden served over twenty-four years in jail before the state court granted his amended Post Conviction Relief Act petition, vacated his conviction, and granted him a new trial. The state court then granted the Commonwealth's motion to *nolle pros* the original charges. But to secure his release, Mr. Gladden agreed to plead no contest to third-degree murder resulting in the state court sentencing him to no less than ten but no more than twenty years in prison with immediate parole because he had already served over four years more than his maximum twenty-year sentence. The Pennsylvania Department of Corrections released Mr. Gladden.

Mr. Gladden sued for damages. We are now reviewing an amended Complaint which inartfully patterns allegations from his co-defendant's civil rights complaint filed in 2019 and resolved in late 2020. He sues the arresting detectives for various constitutional violations, civil conspiracy, and failure to intervene. He also alleges the City of Philadelphia is liable for its known

unconstitutional policies and customs and its deliberate indifference towards the detectives' conduct. The detectives and City move to dismiss arguing Mr. Gladden cannot sue for damages because he pleaded no contest to a lesser offense after the state court invalidated his original conviction to secure his release. They alternatively argue some claims must be dismissed because the detectives enjoy qualified immunity. We find Mr. Gladden's fabrication of evidence and deliberate deception direct, conspiratorial, and municipal liability claims are not presently barred due to his second conviction for the lesser crime after he served over four years longer in prison for the vacated conviction. But we grant the detectives' motion to dismiss the failure to intervene claim and all other theories of liability except fabrication of evidence and deliberate deception.

## I.    Alleged Facts

Jimel Lawson shot and killed Hulon Bernard Howard in Mr. Howard's home on August 6, 1996.[1]  Lena Laws (Mr. Howard's girlfriend), Denise Williams, and "a man identified as Omar" "were at [Mr. Howard's] home to smoke crack-cocaine" with Mr. Howard.[2] Three "young men"— two of whom "were armed"—entered Mr. Howard's home.[3] Mr. Howard argued with one of the "young men" over money Mr. Howard purportedly owed.[4] One of the three young men shot and killed Mr. Howard.[5]

Multiple police officers arrived at the scene of Mr. Howard's murder and subsequently provided statements to Philadelphia Homicide Detectives, including Detectives Hughes and Kane.[6] Detective Hughes obtained a recorded statement from the only remaining witness at the scene, Ms. Laws, in the early morning hours following Mr. Howard's murder.[7] The Detectives continued to investigate Mr. Howard's murder into 1997.[8] They made handwritten notes and activity sheets.[9] They re-interviewed Ms. Laws and interviewed Ms. Williams in early 1997.[10]

Following their investigation, Detective Hughes obtained an arrest warrant for Mr. Gladden in July 1997, and the Philadelphia Police arrested Mr. Gladden.[11] Mr. Gladden's trial began on May 7, 1999 with a death penalty-qualified jury.[12] The jury found Mr. Gladden guilty of felony murder, robbery, and criminal conspiracy resulting in a sentence of life without the possibility of parole.[13]

### The post-conviction court eventually overturns Mr. Gladden's conviction, and he pleads no contest to third-degree murder.

Mr. Gladden's co-defendant, Terrance Lewis, challenged his conviction through Pennsylvania's Post Conviction Relief Act proceedings and a federal habeas petition.[14] Following an evidentiary hearing where Mr. Gladden testified, the habeas court denied Mr. Lewis's petition despite finding him likely innocent because of procedural issues with his petition.[15] Mr. Lewis renewed his post-conviction petition following two Supreme Court cases relating to mandatory life sentences for juveniles.[16] The Philadelphia District Attorney's Office's Conviction Integrity Unit began investigating Mr. Lewis's claim of actual innocence in 2017 and concluded there is "a strong likelihood that Mr. Lewis is actually innocent of the offense for which he was convicted."[17] The post-conviction court granted Mr. Lewis's petition and ordered a new trial due to trial errors causing due process violations.[18] The District Attorney moved to *nolle pros* the charges against Mr. Lewis, which the resentencing court granted, and the Commonwealth released Mr. Lewis.[19]

Mr. Gladden filed an amended Post Conviction Relief Act petition shortly after the court released Mr. Lewis "based on Mr. Lewis['s] federal civil complaint, which was the first time Mr. Gladden became aware of the numerous unconstitutional actions of the Defendant Detectives."[20] The state court granted Mr. Gladden's petition and ordered a new trial "for the same reasons" another judge vacated Mr. Lewis's conviction.[21]

But unlike with Mr. Lewis, the District Attorney added a condition to its *nolle pros*: Mr. Gladden needed to plead no contest to third-degree murder to secure release and avoid another trial.[22] Mr. Gladden agreed. The state court sentenced Mr. Gladden to "no less than ten but no more than twenty years in prison with immediate parole" because Mr. Gladden had already served twenty-four years in prison.[23]

### *Mr. Gladden sues the Detectives.*

Mr. Gladden now sues Detectives Hughes and Kane alleging the Detectives committed various constitutional violations causing him harm.[24] He brings an "omnibus" civil rights claim for "deprivation of liberty without due process of law and denial of a fair trial under the Fourth and Fourteenth Amendments."[25] Mr. Gladden alleges the Detectives fabricated evidence and deliberately deceived the court and Mr. Gladden during their investigation and Mr. Gladden's prosecution. For example, Mr. Gladden alleges the Detectives uncovered evidence during their investigation which they never provided to Mr. Gladden or the prosecution;[26] used unconstitutionally suggestive photo arrays causing the witnesses to identify Mr. Gladden's co-defendant, Mr. Lewis, as one of the perpetrators;[27] and fed Ms. Laws details about the crime she did not know to match the Detectives' version of events and coerced her to change her story.[28] Because Mr. Gladden did not have the information the Detectives allegedly suppressed, destroyed, or otherwise kept from him and the prosecution, he could not adequately defend himself or cross-examine Ms. Laws at trial.[29] He also brings claims for civil rights conspiracy and failure to intervene against the Detectives.[30]

### *Mr. Gladden also sues the City*.

Mr. Gladden also sues the City alleging civil conspiracy, a failure to intervene, and municipal liability based on the Detectives' conduct and its policy, practice, or custom of unconstitutional homicide investigations.[31] Mr. Gladden alleges the Detectives' conduct is not a

one-off occurrence, but rather the Philadelphia Police Department had a "pattern and practice of unconstitutional misconduct in homicide investigations, including the coercion and suggestions of false statements from witnesses, coercing and suggesting false identifications of suspects through the use of unconstitutional identification procedures, and the suppression of exculpatory and inconsistent evidence dates back to at least the 1970's and continued beyond the timeframe that the Defendant Detectives investigated and prosecuted Mr. Gladden."[32] The City knew of the Department's practices and procedures evidenced by various newspaper and government investigations, consent decrees, and the "39th District Corruption Scandal."[33] And the Department's known practices caused many overturned convictions.[34] Mr. Gladden finally alleges the City acted with "deliberate[] indifferen[ce] to the need to train, supervise, and discipline officers" and failed to "train or supervise those who they knew or should have known were likely to perpetuate or continue the unconstitutional policies, practices and customs of unconstitutional police misconduct in Homicide investigations" or "take appropriate remedial and disciplinary actions" to stop the conduct.[35]

## II.   Analysis

The Detectives and City now move to dismiss arguing Mr. Gladden's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*[36] because Mr. Gladden's plea and conviction for third-degree murder of Mr. Howard "likely" undermines his civil rights claim challenging his earlier conviction.[37] They also argue Mr. Gladden's "omnibus" claim must be partially dismissed and the failure to intervene claim must be dismissed under qualified immunity. They lastly argue Mr. Gladden fails to state part of his municipal liability claim against the City.[38] We agree with the City and Detectives concerning the overbroad inartful nature of the amended Complaint which Mr. Gladden largely walked back in his briefing. But he may proceed on limited claims for direct,

conspiratorial, and municipal liability arising from the fabrication of evidence and deliberate deception claims.

    **A. The *Heck* doctrine does not bar Mr. Gladden's claim for fabrication of evidence and deliberate deception in violation of his Fourth and Fourteenth Amendment rights to due process and a fair trial.**

    Mr. Gladden's claim the Detectives violated his Fourth and Fourteenth Amendment due process rights and right to a fair trial by fabricating evidence and deliberately deceiving counsel and the state court by concealing and suppressing relevant and material evidence is not barred by *Heck*.[39]

    The Supreme Court in *Heck* held for a plaintiff to recover monetary damages under 42 U.S.C. § 1983 "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[40] We must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[41] But if we "determine[] that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit."[42]

    The City and the Detectives fail to meet their burden as the moving parties to demonstrate *Heck* bars Mr. Gladden's claims.[43] They argue: "[S]uccess on Plaintiff's claims—which, without explication of what is actually required to make out the omnibus due process claim for which he seeks redress, ***likely*** requires either a showing there was no probable cause to initiate prosecution

for murder or factually challenging the quantum of evidence supporting his murder conviction—would necessarily imply his extant conviction for murder is invalid."[44] Arguing something is "likely" to happen does not carry the day for the City and Detectives. *Heck* bars Mr. Gladden's claims only if judgment in his favor "***necessarily***"—not "likely"—"impl[ies] the invalidity of his conviction or sentence."[45] They fail to meet their burden.

But even if they did, we are persuaded by Judge Robreno's thoughtful analysis in *Dennis v. City of Philadelphia*,[46] and must deny the City and Detectives' motion to dismiss. Judge Robreno considered "a novel question": "may an individual whose conviction for first-degree murder was vacated pursuant to a writ of habeas corpus, ordering release or a new trial, and who subsequently entered a no contest plea to third-degree murder, bring a § 1983 claim for fabrication of evidence and deliberate deception in connection with the vacated conviction for first-degree murder?"[47] He concluded: "Plainly put, yes."[48] Judge Robreno, relying on decisions from the Court of Appeals for the Second and Ninth Circuits,[49] found considering whether a plaintiff's claim is barred by *Heck* in "two-conviction cases" requires a "modified version" of the two-step *Heck* inquiry: (1) "what is the effect, if any, of the particular § 1983 action on the first conviction as well as the second conviction?" and (2) " has the conviction or sentence [] been invalidated."[50]

Judge Robreno then applied this inquiry to Mr. Dennis's claims for fabrication of evidence and deliberate deception.[51] He analogized Mr. Dennis's claims to a *Brady*-like violation and found: "This type of action . . . only bears on the conviction in which the violations occurred and not on a subsequent conviction, even if based on the same general underlying conduct of the plaintiff . . . fabricated evidence and deliberate deception, including the support of false testimony at trial, thwart the basic purposes of due process and work to deny an individual a fair trial. Under our system of justice, even the guilty are entitled to due process and a fair trial. In other words, if a

plaintiff brings a § 1983 claim that does not depend upon his ultimate guilt or innocence of the underlying conviction, it does not matter even if after the first criminal conviction is vacated, he is convicted a second time for the same conduct."[52]

Judge Robreno relied on the Court of Appeals for the Ninth Circuit's decision in *Jackson v. Barnes*, which "clarified this point."[53] Mr. Jackson brought a civil rights action seeking damages for violations of his Fifth Amendment rights which occurred at his first trial *after* a jury re-convicted him of first-degree murder at a new trial following issuance of habeas relief.[54] The Court of Appeals held Mr. Jackson's subsequent conviction "was a 'clean conviction' and 'entirely insulated from the . . . violation associated with his initial conviction,'" and thus, *Heck* did not bar his claim.[55] Judge Robreno similarly concluded Mr. Dennis's claims only undermined the validity of his original conviction, which had been invalidated.[56] Judge Robreno concluded *Heck* did not bar Mr. Dennis's claims.[57]

We are guided by Judge Robreno's thoughtful analysis as applied to Mr. Gladden's claim. Mr. Gladden alleges the Detectives fabricated evidence and deliberately deceived counsel and the court by concealing and suppressing relevant and material evidence depriving him of his liberty without due process and a fair trial.[58] His claim for fabrication of evidence and deliberate deception undermines his original conviction. But the state court invalidated his original conviction when it granted his amended Post Conviction Relief Petition, overturning his conviction and ordering a new trial. Mr. Gladden's subsequent conviction is a "clean conviction" and "entirely insulated" from the previous violations because he knew of them when he pleaded no contest to third-degree murder, which has the same legal effect as a guilty plea, and he still accepted the plea.[59] Mr. Gladden's civil rights claim "only bears on the conviction in which the violation occurred"—*i.e.*,

his 1999 conviction for felony murder, robbery, and criminal conspiracy—and are not barred by *Heck*.[60]

The City and Detectives rely on two cases from our Court of Appeals: *Curry v. Yachera*[61] and *Lynn v. Desiderio*.[62] But these cases are distinguishable. In *Curry*, the plaintiff pleaded *nolo contendere* to criminal charges and then brought claims for malicious prosecution, false arrest, and false imprisonment seeking damages stemming from the same charges and other charges brought against him but later dismissed.[63] Judge Stengel dismissed the claims related to the charges to which he pleaded *nolo contendere* as barred by *Heck*.[64] Our Court of Appeals found Judge Stengel properly applied *Heck* to bar this later civil rights claim because the plaintiff did not "allege that his conviction was invalidated to satisfy the favorable termination rule."[65] In *Lynn*, the Commonwealth charged Mr. Lynn with defiant trespass, he remained in jail for fifty days, and then a magistrate judge dismissed his defiant trespass charge, charged him with disorderly conduct, and sentenced him to time served.[66] He subsequently brought a civil rights claim against the officer and landlord alleging unlawful search and seizure in violation of the Fourth Amendment, unlawful arrest and incarceration under the Fourteenth Amendment, and "unarticulated" First Amendment violations.[67] Judge Gardner dismissed his claims under *Heck*.[68] Mr. Lynn argued on appeal the dismissal of his defiant trespass charge constituted a reversal in his favor allowing his claim to proceed.[69] Our Court of Appeals affirmed Judge Gardner's dismissal, holding "[d]ismissing the defiant trespass charge does not alter the fact that success on Lynn's constitutional claims would necessarily imply the invalidity of the disorderly conduct conviction, a conviction that has not been reversed on appeal, expunged, declared invalid, or called into question."[70]

*Curry* and *Lynn* address the *Heck* bar when there is only one conviction which has not been invalidated. This is not the situation presented today. We do not address one conviction or a

simultaneous conviction and dismissal. Rather, a jury convicted Mr. Gladden in 1999 of felony murder, robbery, and criminal conspiracy. A state court invalidated the conviction when it granted his amended Post Conviction Relief Act petition. He then pleaded guilty to a crime not previously charged—third-degree murder—to secure his release, as he had already served *over* the maximum term of his sentence. As Judge Robreno reasoned, Mr. Gladden, unlike the plaintiffs in *Curry* and *Lynn*, "has met the plain requirements of *Heck*" because his 1999 "conviction no longer stands."[71] He may seek damages under section 1983 related to the constitutional violations leading to his 1999 conviction.

We appreciate the City's and Detectives' argument Mr. Gladden pleads the City and Detectives' constitutional violations caused him to be wrongfully arrested and prosecuted without probable cause and wrongfully incarcerated for twenty-four years forming the basis of their *Heck* challenge here.[72] We agree with the City and Detectives Mr. Gladden's pleading suggesting he is "actually innocent" is inartful. But Mr. Gladden's inartful pleading does not dictate a finding his claims are barred by *Heck* on this motion to dismiss.

Mr. Gladden's claims—as plead and confirmed in his response to the motion to dismiss—are for fabricating evidence and deliberate deception causing deprivation of liberty without due process of law and denial of a fair trial in violation of the Fourth and Fourteenth Amendments.[73] To succeed on a claim for fabrication of evidence, Mr. Gladden must show "there is a reasonable likelihood, that, without the use of that evidence, [he] would not have been convicted" of felony murder, robbery, and conspiracy, and for deliberate deception, Mr. Gladden must show he "would not have been convicted of [felony murder, robbery, and conspiracy] in the absence of the deliberate deception."[74] Neither of these claims require Mr. Gladden to show he is actually innocent of *third-degree murder*—despite him suggesting he is indeed actually innocent in his

pleading.[75] And under *Heck* we consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" for third-degree murder.[76] We conclude it does not at this stage.

The City and Detectives fail to address the elements of either claim Mr. Gladden brings, and rather summarily argue he is challenging the evidence supporting his third-degree murder conviction and thus his claims must be barred.[77] This argument fails for two reasons.

First, the City and Detectives' argument focuses on Mr. Gladden's damages—*i.e.* what harm the alleged constitutional violations *caused* Mr. Gladden—and not the actual claims he brings. Neither we nor a jury need to conclude the Detectives arrested and the Commonwealth prosecuted Mr. Gladden without probable cause to find in favor of Mr. Gladden on his fabrication of evidence and deliberate deception claims. Nor does the fact finder need to conclude Mr. Gladden is actually innocent of third-degree murder, of which he remains legally convicted. And Mr. Gladden now confirms he does not "challenge his carceral sentence of 10-20 years" and thus does not seek damages for the time he spent lawfully incarcerated.[78] But Mr. Gladden served over twenty-four years in prison—years more than his maximum sentence of twenty years. Mr. Gladden's claims are not barred by *Heck* because they do not "necessarily imply the validity of his conviction or sentence" for third-degree murder which has not been invalidated. Our finding today does not preclude the City and Detectives from later raising the issue of damages and Mr. Gladden's claims of actual innocence at the appropriate stage of this litigation.

Second, the City and Detectives' argument regarding the "allegedly fabricated" evidence being "the core evidence also supporting [Mr. Gladden's] second conviction" is inappropriate on a motion to dismiss where we must accept the plaintiff's allegations as true and cannot go outside of the pleading to make this factual finding. This argument is more appropriate for summary

judgment should discovery show Mr. Gladden's third-degree murder conviction is based on the evidence he challenges in his claims relating to his invalidated conviction for felony murder, robbery, and conspiracy. The City and Detectives' argument Mr. Gladden's claim "*likely* requires either a showing there was no probable cause to initiate prosecution for murder or factually challenging the quantum of evidence supporting his murder conviction" further illustrates why this argument is inappropriate at this stage.[79] We decline to make this factual finding on a motion to dismiss with no factual record supporting the City and Detectives' argument because it is both inappropriate at this stage and otherwise not proven by the moving parties.

Mr. Gladden states his "omnibus" civil rights claim, and we conclude his claims are not barred by *Heck* consistent with Judge Robreno's learned reasoning. Any finding to the contrary would insulate the City and Detectives from liability when plaintiffs like Mr. Gladden are allegedly wrongfully incarcerated due to constitutional violations leading to a now-invalidated conviction merely because the plaintiff subsequently pleads guilty to a lesser, uncharged offense carrying a lesser sentence than what they already served. This result would create manifest injustice for plaintiffs who are wronged by those entrusted with the duty to protect.

**B. Mr. Gladden concedes some claims are barred by qualified immunity.**

The City and Detectives alternatively move to dismiss: the "omnibus due process claim" to "the extent . . . it is predicated on any theories of Fourteenth Amendment malicious prosecution, withholding of evidence, and failure to conduct a constitutionally adequate investigation" because the Detectives are entitled to qualified immunity; the failure to intervene claim because the Detectives are entitled to qualified immunity; and, the claim against the City for municipal liability to the extent Mr. Gladden's claim against the City is premised on violations of constitutional rights which were not clearly established at the time, namely the claims which the City and Detectives argue should be dismissed against the Detectives because they are entitled to qualified immunity.

Mr. Gladden does not argue he does not bring claims for malicious prosecution, withholding evidence, and failure to conduct a constitutionally adequate investigation despite them not appearing on the face of his "omnibus" claim in Count One; rather, he concedes: "Plaintiff has no argument on the Defendants' claims of qualified immunity as to *Brady*, Fourteenth Amendment malicious prosecution, constitutionally inadequate investigation and failure to intervene theories of liability."[80] Mr. Gladden concedes he cannot bring those claims.[81] He instead argues the City and Detectives do not seek dismissal of his claims for "fabrication of evidence, deliberate deception[,] and civil conspiracy" based on qualified immunity and thus his complaint should not be dismissed in full.

Because Mr. Gladden concedes he cannot bring claims for a *Brady* violation, malicious prosecution, constitutionally inadequate investigation, and failure to intervene, and therefore, the portion of the municipal liability claim against the City premised on those claims, we grant the City and Detectives' motion to dismiss in part to the extent Mr. Gladden's claims are based upon those causes of action. And we agree with Mr. Gladden the City and Detectives do not seek dismissal of his claims based on fabrication of evidence and deliberate deception considering our Court of Appeals's recent decision in *Dennis v. City of Philadelphia*[82] addressing qualified immunity in the context of those very claims.

Mr. Gladden may accordingly proceed on his claims for direct, conspiratorial,[83] and municipal liability for fabrication of evidence and deliberate deception depriving him of his liberty without due process and a fair trial in violation of the Fourth and Fourteenth Amendments.

## III.    Conclusion

Mr. Gladden sought relief through Pennsylvania's Post Conviction Relief Act after he discovered various constitutional violations occurred leading to his original conviction for felony

murder, robbery, and conspiracy in 1999. The state court granted his petition invalidating his conviction. He then plead no contest to third-degree murder to secure his release. The state court resentenced him to no less than ten and no more than twenty years incarcerated. He had already served twenty-four years. The state court granted him immediate parole. He now sues the Detectives and City for the constitutional violations leading to his original wrongful conviction. The City and Detectives ask us to bar his claims under *Heck* because he subsequently pleaded no contest to a lesser crime despite the fact Mr. Gladden served jail time he would not have otherwise served but for his original, invalidated conviction. We agree with Judge Robreno's analysis in *Dennis*, a nearly identical case, and deny in part the City and Detectives' motion to dismiss based on *Heck*. We grant the City and Detectives' motion in part with Mr. Gladden's consent and dismiss: claims premised on a *Brady* violation, malicious prosecution, or constitutionally inadequate investigation; the failure to intervene claim; and the portion of the municipal liability claim against the City premised on those claims.

Mr. Gladden may proceed to discovery on his claims against the City and Detectives for fabrication of evidence and deliberate deception, and his civil rights conspiracy and municipal liability claims to the extent premised on his claims for fabrication of evidence and deliberate deception.

---

[1] ECF Doc. No. 8 ¶ 14.

[2] *Id.* ¶ 17.

[3] *Id.* ¶ 18.

[4] *Id.* ¶ 19.

[5] *Id.* ¶ 20.

[6] *Id.* ¶¶ 21–73.

[7] *Id.* ¶¶ 74–102.

[8] *See, e.g.*, *id.* ¶¶ 103–139, 147–170.

[9] *Id.* ¶¶ 127–139.

[10] *Id.* ¶¶ 152–70.

[11] *Id.* ¶¶ 172–73.

[12] *Id.* ¶¶ 174–75.

[13] *Id.* ¶ 212.

[14] *Id.* ¶¶ 214–23.

[15] *Id.* ¶¶ 222–23.

[16] *Id.* ¶¶ 224–26.

[17] *Id.* ¶¶ 227, 231.

[18] *Id.* ¶ 234.

[19] *Id.* ¶¶ 235–37.

[20] *Id.* ¶ 238.

[21] *Id.* ¶¶ 239–40. Mr. Lewis resolved his claims against the City and Detectives before Judge Baylson in late 2020. Mr. Gladden's lawyers represented Mr. Lewis and now seemingly pattern their present allegations on the allegations in Mr. Lewis's complaint. *See Lewis v. City of Philadelphia*, No. 19-2847, ECF Doc. No. 1.

[22] *Id.* ¶¶ 2–3, 241.

[23] *Id.* ¶¶ 2–3, 241.

[24] *Id.* ¶¶ 4–5.

[25] *Id.* at 44 (Count One).

[26] *Id.* ¶¶ 38–40, 61–62, 101–102, 127–39, 146–47, 157–58.

[27] *Id.* ¶¶ 155–56, 170.

---

[28] *Id.* ¶¶ 141–45, 152–56.

[29] *Id.* ¶¶ 195–96, 198–210.

[30] *Id.* at 46–48 (Counts Two and Three).

[31] *Id.* ¶¶ 279 (alleging "Defendants", not just "Detective Defendants"), 283 (same); *see generally id.* at 46–50 (Counts Two through Four).

[32] *Id.* ¶ 242; *see also id.* ¶¶ 243–50, 260.

[33] *Id.* ¶¶ 251–52, 258–59.

[34] *Id.* ¶¶ 253–57.

[35] *Id.* ¶¶ 261, 286.

[36] 512 U.S. 477 (1994).

[37] ECF Doc. No. 10 at 8–11. Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.*, 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth'" because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of

'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[38] *Id.* at 17–21.

[39] ECF Doc. No. 8 ¶¶ 268–72; *see also* ECF Doc. No. 13 at 6 (clarifying claims Mr. Gladden is bringing against Detectives and City).

[40] *Heck*, 512 U.S. at 486–87.

[41] *Id.* at 487.

[42] *Id.* (emphasis in original) (footnote omitted).

[43] *Hedges v. United States*, 404 F.3d 744, 750 (discussing standard on Rule 12(b)(6) motion and finding "[t]he defendant bears the burden of showing that no claim has been presented").

[44] ECF Doc. No. 10 at 11 (emphasis added).

[45] *Heck*, 512 U.S. at 487 (emphasis added).

[46] 379 F. Supp. 3d 420 (E.D. Pa. 2019), *aff'd in part, appeal dismissed in part*, 19 F.4th 279 (3d Cir. 2021).

[47] *Id.* at 423.

[48] *Id.*

[49] *Id.* at 429 (citing *Jackson v. Barnes*, 749 F.3d 755, 758 (9th Cir. 2014) and *Poventud v. City of New York*, 750 F.3d 121, 124–25 (2d Cir. 2014) (en banc)).

[50] *Id.* at 428–29 ("In many ways, applying *Heck*'s dictates should be simple enough to follow by applying a two-step inquiry. First, the Court asks the following question: would a favorable judgment in the plaintiff's § 1983 action undermine the validity of his conviction or sentence? If yes, the Court proceeds to the second step and asks the following question: has that conviction or sentence has been invalidated? *Heck* supplies four ways in which the conviction or sentence could be invalidated: (1) reversed on direct appeal, (2) expunged by executive order, (3) declared invalid by an authorized state tribunal, or (4) called into question by a federal writ of habeas corpus . . . In such two-conviction cases, these courts ask a modified version of the first question in the two-step inquiry: what is the effect, if any, of the particular § 1983 action on the first conviction as well as the second conviction? If the answer is that one (or both) of the convictions would be undermined, the Court proceeds to step two and asks if the conviction that would be undermined has been invalidated.").

---

[51] *Id.* at 429–30.

[52] *Id.* at 430.

[53] *Id.* (citing *Jackson*, 749 F.3d at 758–61).

[54] *Id.* (discussing facts of *Jackson*).

[55] *Id.* (quoting *Jackson*, 749 F.3d at 761).

[56] *Id.*

[57] *Id.*

[58] ECF Doc. No. 8 ¶¶ 267–75 (Count One); *see also* ECF Doc. No. 13 at 6.

[59] *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016).

[60] *See, e.g. Dennis*, 379 F. Supp. 3d at 429–30.

[61] 835 F.3d 373 (3d Cir. 2016).

[62] 159 F. App'x 382 (3d Cir. 2005).

[63] *Curry*, 835 F.3d at 378.

[64] *Id.* at 376.

[65] *Id.* at 379.

[66] *Lynn,* 159 F. App'x at 383.

[67] *Id.* at 383–84.

[68] *Id.* at 383–84.

[69] *Id.* at 384.

[70] *Id.*; *see also Donahue v. Dauphin Cty. Solics. Off., Harrisburg, PA*, 788 F. App'x 854, 856 (3d Cir. 2019) (affirming district court finding plaintiff's claims are *Heck*-barred when plaintiff was convicted of one charge but another charge stemming from the same incident was dismissed, and plaintiff subsequently sued under Section 1983, reasoning "[w]e have ruled that the simultaneous conviction on some counts and acquittal on others does not qualify as a favorable termination if 'the charges aim[ed] to punish one course of conduct.'") (citing *Kossler v. Crisanti*, 564 F.3d 181, 192 (3d Cir. 2009)).

[71] *Dennis*, 379 F. Supp. 3d at 430–31.

[72] *See, e.g.*, ECF Doc. No. 8 ¶¶ 262–72.

[73] Mr. Gladden also brings a civil conspiracy claim, which, as we discuss below, is based on the fabrication and deliberate deception claim, and a claim for municipal liability against the City.

[74] *Dennis*, 379 F. Supp. 3d at 432 (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014) and *Drumgold v. Callahan*, 707 F.3d 28, 49 (1st Cir. 2013)).

[75] *See, e.g.*, *Poventud*, 750 F.3d at 138 ("No element of his § 1983 Brady claim requires Poventud to prove his absence from the scene of the crime; if it did, his claim would be *Heck*-barred.").

[76] *Heck*, 512 U.S. at 487. As discussed earlier in this memorandum, Mr. Gladden's claim undermines his 1999 conviction, but this conviction is invalidated.

[77] ECF Doc. No. 16 at 5–8.

[79] ECF Doc. No. 10 at 11 (emphasis added).

[80] ECF Doc. No. 13 at 6.

[81] *Id.*

[82] 19 F.4th 279 (3d Cir. 2021).

[83] *Thorpe v. City of Phila.*, No. 19-5094, 2020 WL 5217396, at *12 (E.D. Pa. Sept. 1, 2020) ("Where substantive § 1983 claims are permitted to proceed, the Third Circuit Court of Appeals stated in 2005 that 'it follows that the 42 U.S.C. § 1983 conspiracy claim . . . may also proceed.'" (citing *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 446 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 183 (3d Cir. 2010))).